Filed 6/27/24  In re A.T. CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re A.T., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE, Plaintiff and Respondent, v. A.T., Defendant and Appellant. | E081618 (Super.Ct.No. RIJ2000712) OPINION |

APPEAL from the Superior Court of Riverside County.  Mark E. Petersen, Judge. Affirmed.

Sheila O'Connor, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Steve Oetting and Heather B. Arambarri, Deputy Attorneys General, for Plaintiff and Respondent.

1

Minor A.T. (minor)[1] appeals from an order transferring him from the juvenile court to a court of criminal jurisdiction, pursuant to Welfare and Institutions Code section 707.[2] He contends: (1) the juvenile court abused its discretion in finding him not amenable to rehabilitation while under the juvenile court's jurisdiction, since its findings were not supported by substantial evidence; and (2) the court erred in relying on a probation report which was prepared prior to recent amendments made to section 707. In supplemental briefing, minor contends that Senate Bill No. 545's recent amendments, as well as changes to the rules of court, apply to him, and he requests a remand to the juvenile court for a new transfer hearing. We affirm.

PROCEDURAL BACKGROUND

*Prior Petitions*

On November 23, 2020, the Riverside County District Attorney's Office (the District Attorney) filed a juvenile wardship petition pursuant to section 602, subdivision (a), alleging that minor had committed burglary. (Pen. Code, § 459.) On February 23, 2021, the District Attorney filed a subsequent petition, alleging that minor had committed petty theft and carried a concealed dirk or dagger. (Pen. Code, §§ 488, 21310.)

---

[1] Minor's birthday is January 2004. At the time of the transfer hearing, A.T. was 19 years old and, thus, no longer a minor. However, to avoid confusion, we will still refer to him as "minor" in this opinion.

[2] All further statutory references will be to the Welfare and Institutions Code, unless otherwise indicated.

On March 16, 2021, minor admitted the burglary allegation from the November 23, 2020 petition and the concealed dirk or dagger allegation from the February 23, 2021 petition, and the court dismissed the petty theft allegation. On April 12, 2021, the court granted minor deferred entry of judgment (DEJ) and released him to live with his adult sister on home supervision, under specified probation conditions.

On December 2, 2021, the Riverside County Probation Department (the probation department) filed a petition to lift the DEJ and proceed to disposition. The probation officer reported that minor had made minimal progress on DEJ. He tested positive for a controlled substance multiple times and was directed to enroll in a substance abuse program, but he failed to appear for his appointment and missed several weekly drug tests. The probation officer reported that minor showed a complete disregard for the court's orders and the probation officer's directives. The court held a hearing on December 8, 2021, lifted the DEJ, and temporarily placed minor in juvenile hall.

On December 23, 2021, the court adjudged minor a ward of the court and released him to his mother's custody, under certain conditions. The probation officer reported that minor started regressing. He ran away from home the moment he was released to his mother's custody, and his mother failed to report that he was away for approximately 12 days. He then started participating in programs but began testing positive for marijuana and leaving home without permission.

On January 5, 2022, the District Attorney filed a subsequent petition, alleging minor had committed assault with a firearm, unlawful discharge of a firearm at an

3

occupied building, and discharge of a firearm in a grossly negligent manner, on or about January 4, 2022. (Pen. Code, §§ 245, subd. (a)(2), 246, 246.3, subd. (a).)

On January 21, 2022, minor admitted the assault allegation, and the juvenile court dismissed the remaining allegations. The court continued minor as a ward and ordered him placed at the Riverside County Youth Treatment and Education Center (YTEC).

On February 10, 2022, the People filed a subsequent petition alleging that minor had committed a burglary in November 2021. (Pen. Code, § 459.) On March 7, 2022, minor admitted the burglary and the juvenile court ordered that he continue at YTEC.

On August 31, 2022, minor completed the program at YTEC and was released from the youth detention facility. The social worker reported that, after his release from YTEC, minor's compliance with the conditions of his probation was poor and "he . . . made little to no progress towards maintaining his rehabilitation." He relapsed into using marijuana and refused to comply with directives to regularly attend outpatient treatment. Minor only sporadically participated in his required individual counseling, and he was continuously in contact with people on active parole/probation.

*Current Petition and Transfer Motion*

On November 7, 2022, the District Attorney filed a petition alleging that minor committed murder on or about July 6, 2021, and, in the commission of the murder, personally and intentionally discharged a firearm causing great bodily injury and death. (Pen. Code, §§ 187, subd. (a), 12022.53, subd. (d).) The District Attorney also filed a motion to transfer minor from juvenile court to a court of criminal jurisdiction, pursuant to section 707, subdivision (a)(1).

4

*Probation Officer's Report*

On December 2, 2022, the probation department filed a report addressing minor's fitness for transfer to a criminal jurisdiction court. The probation department reported the circumstances of the murder, as follows: On July 6, 2021, a minor (the witness) and his 16-year-old friend (the victim) were walking to the driveway of a mobile home park. The victim told the witness to stop and wait while he continued walking. The witness asked the victim whom he was going to meet, but the victim did not answer and kept walking toward the driveway. Approximately 30 seconds after the victim began walking away, the witness heard a gunshot and ran to the front of the mobile home park. He saw the victim lying on the ground and a suspect car with the front and passenger doors open. The male in the front passenger seat had a gun in his right hand. The witness grabbed his own gun from his waistband and fired three shots toward the car. The victim was treated at a nearby hospital but eventually died.

About an hour after the shooting, the Riverside County Sheriff's Department received a report that minor had come into a hospital to be treated for two gunshot wounds. Minor told investigators that he had been walking on a sidewalk when an unknown car pulled up, and someone in the car shot him. He was unable to provide any information on the suspect and did not desire prosecution.

Cellular phone records from the day of the shooting showed that cell phones belonging to minor and his friend, B.V., were in the area of the shooting. A record check showed that minor and B.V. had been arrested together previously for burglary and possession of a loaded firearm.

5

On January 21, 2022, a search warrant was executed at B.V.'s residence, and he was arrested on an unrelated matter. During the search, a car belonging to B.V.'s mother was located and observed to have two gunshot marks on the rear panel of the passenger side. Two bullet projectiles were found in the trunk, and they were later determined to match the witness's gun.

On November 4, 2022, minor was arrested and taken into custody. While in custody, he admitted to being an active member of " 'My Gangster Familia 13' " criminal street gang. When informed he was in custody for the current matter, minor said the victim was a " 'random plug' " that friends of B.V. knew. Minor stated he had planned to rob the victim of marijuana but shot him one time due to feeling " 'paranoid.' " Minor stated he then hid the expended cartridge casing after he shot the victim, and the witness shot him in the buttocks.

The probation officer evaluated the five criteria in section 707, subdivision (a)(3)(A)-(D), and recommended that the matter be transferred to a court of criminal jurisdiction. The probation officer evaluated the criteria, as follows:

(1) *The Degree of Criminal Sophistication Exhibited by Minor*

The probation officer stated that minor was alleged to have committed the murder when he was 16 years old, at which age he could recognize right from wrong. He had an individualized education plan (IEP) due to his learning disabilities but was still able to graduate from high school "within an appropriate time frame,"[3] which indicated he had

---

[3] Minor graduated high school on June 16, 2022.

an "age-appropriate level of intellectual capacity." The probation officer further opined that minor's actions after the shooting showed the lengths he went to in "avoid[ing] discovery," including that he sought medical help at a hospital in Riverside when the shooting took place in Corona; he told the hospital staff and investigators he was the victim of random gun violence; and he hid the expended cartridge casing. Further, minor was on probation for another 15 months after the shooting and had multiple contacts with law enforcement, but made no attempt to take responsibility for his actions. The probation officer also noted that the victim was outnumbered and unarmed, and concluded that these factors, plus the fact that minor shot the victim in the back, showed minor's deliberate intent to harm and his disregard for human life. The probation officer further noted minor's statement that the victim was a " 'random plug' " whom he was going to rob, which showed that he had the intent to harm. Moreover, minor demonstrated no remorse for his actions.

The probation officer additionally observed that minor committed the current offense on July 6, 2021, after he had just been granted DEJ on March 16, 2021, showing a complete disregard for the opportunity the court afforded him. Then, on January 4, 2022, he was arrested on an allegation of attempted murder, which later resulted in an adjudication for assault with a firearm.

(2) *Whether the Minor Can be Rehabilitated Prior to the Expiration of the Juvenile Court's Jurisdiction*

The probation officer asserted that minor was presently 18 years old and, if the allegation was found true, the offense would have a baseline term of seven years. The

7

probation officer noted that minor had spent the last two years on a grant of DEJ, wardship with release at various times on home supervision, release to various family members, and a commitment to YTEC. Once minor was committed to YTEC, he received a myriad of services, including substance abuse counseling, aggression replacement training, moral reconation therapy, individual therapy, family therapy, and psychiatric services. As minor's release from YTEC approached, he was linked to his aftercare services team, which included an individual therapist and a "TAY[4] Peer specialist." After being released, minor missed multiple appointments with his TAY peer and left two housing arrangements she made for him. Furthermore, he only attended six of his 11 scheduled counseling sessions. He also had poor attendance in his substance abuse counseling, despite his ongoing use. The probation officer noted minor's exhaustion of all juvenile resources and lack of amenability to probation services and recommended that minor be transferred to a court of criminal jurisdiction, under this criterion.

(3) *Minor's Previous Delinquent History*

Minor's two-year delinquency history included four law violations, with an escalation in his criminal conduct. The probation officer noted that, on January 4, 2022, minor was arrested for attempted murder, which resulted in an adjudication for assault with a firearm and his commitment to YTEC, which began on February 24, 2022.

---

**4** The record does not appear to define "TAY."

8

(4) *Success of Previous Attempts by the Juvenile Court to Rehabilitate the Minor*

Minor was afforded the opportunity to have his first adjudicated offense dismissed pursuant to a grant of DEJ.  However, he continued to engage in delinquent conduct.  The probation officer recognized that minor's family situation "was not set up" to support his rehabilitation, as he lived with multiple family members, including his mother and two adult sisters, after the death of his father in 2008.  The probation officer acknowledged minor's emotional needs, in light of his father's death when he was young and his mother's disinterest in associating with him.  Minor had an abundance of resources to help him address his feelings through the juvenile justice system, as well as through his IEP.  Despite all the resources, he failed to control his behavior, as evidenced by all his law violations.  The probation officer noted that minor was able to successfully complete the YTEC program, with "limited documented behavior issue[s]," but his behavior "waned" after being released.  The probation officer noted that the numerous services he received at YTEC were "all to no avail."

(5) *The Circumstances and Gravity of the Offense Alleged to Have Been Committed by Minor*

The probation officer stated the offense was extremely serious, as it resulted in the death of a 16-year-old victim.  She further noted that minor shot the victim in the back and hid the expended cartridge casing before being shot himself.  He sought medical treatment in a different city and provided a false narrative to medical providers and law enforcement as to how he sustained his injury.  Minor subsequently went home and continued his normal activities, as if nothing had occurred, for 15 months before he was

9

arrested. When confronted about his actions, minor admitted to killing the victim, but made excuses, such as, " 'I was sixteen when it happened,' " " 'I was young and stupid,' " and " 'I wasn't aware of what was happening.' " Furthermore, he never expressed any remorse. Additionally, subsequent to this killing, minor was involved in another shooting.

*Minor's Opposition to the Transfer and Dr. Berg's Report*

On May 2, 2023, minor filed an opposition to the motion to transfer. He argued that the section 707 criteria weighed in favor of him staying in juvenile court. He essentially argued that he was not criminally sophisticated because he had a " 'follower' " personality and therefore did not possess the capacity to plan a criminal act. Minor attached a report from Dr. Berg, who conducted a psychological evaluation of him on February 20, 2023. Dr. Berg opined that minor was passive, prone to be a follower, and highly likely to be influenced by gang members. As to whether or not he could be rehabilitated prior to the expiration of the juvenile court's jurisdiction, Dr. Berg stated that "[f]indings would suggest that he has performed better when he has been in a structured . . . custody program," and stated that he was responsive to counseling activities while at YTEC. Dr. Berg noted minor's prior delinquency history, and stated that minor "has not fully benefited from prior attempts of the court to rehabilitate him." Dr. Berg recognized minor's charge of murder was serious but opined that the murder was likely the result of multiple factors, including the limited support from his parents and family members and his low intellectual capacity. Dr. Berg concluded that, based on

the five criteria in section 707, minor should continue to receive services in the juvenile justice system.

*The District Attorney's Brief*

The District Attorney filed a bench brief in support of the motion to transfer. The brief stated that section 707 allows a juvenile court to transfer a juvenile matter to a court of general jurisdiction, and that the burden was on the petitioner to prove the matter should be transferred by clear and convincing evidence. (Italics omitted.) The brief evaluated the five criteria listed in section 707, citing to the probation officer's report. The District Attorney asserted that minor's delinquent behavior had become increasingly violent, and his inability to be rehabilitated prior to the expiration of the juvenile court's jurisdiction was "supported by the fact that every single service, treatment, guidance counseling, therapy, medication, program offered to [him] during the years of 2021 to present resulted in absolutely no positive result." The District Attorney concluded that minor's actions in the murder were deliberate and extremely violent and were those of a sophisticated criminal who was well beyond the juvenile court system. The District Attorney concluded that minor was not amenable to treatment and asked the court to grant the request to transfer.

*Transfer Hearing and Order*

On May 8, 2023, the juvenile court held a hearing on the motion to transfer. The parties entered the following stipulations: (1) the victim died due to complications from a gunshot wound; (2) minor was an active member of the "Mi Gangsta Familia 13" gang; and (3) the juvenile court could consider the psychological report that had been included

11

in minor's opposition to the transfer motion. The juvenile court stated that it read and considered the probation officer's report and the briefing filed by the parties, including Dr. Berg's evaluation. It then allowed the parties to present their arguments, starting with the People, noting that they bore the burden of proof by clear and convincing evidence. After listening to counsel's arguments, the court took the matter under submission to review all the material and arguments again and issue a written ruling.

The court held a hearing on June 1, 2023, stating that it had filed a 10-page written decision that morning. The court stated that, after considering all the materials and criteria in section 707, it determined that the People had shown by clear and convincing evidence that minor should be transferred to a court of criminal jurisdiction. The court specifically noted "this case was heard this year following the change in 2023 to the burden of proof. And so the Court did apply the new burden of proof to this hearing." The court then stated it was granting the motion to transfer and noted that minor was at least 16 years old at the time of the offense. The court adopted its written order for the hearing and proceeded to orally go through each of the five criteria. It specifically noted that minor was 17 years old at the time of the murder and was now 19 years old. The court stated its belief that minor would require extensive rehabilitative services that could not be provided during the time the juvenile justice system would have. It observed that minor's prior attempts at rehabilitation showed "little to no regard for treatment or serious attempts at completing court terms and conditions . . . ." The court noted that minor's offense was "the most serious type of offense" in that a life was taken unnecessarily; minor had absolutely no regard for human life; he obtained a gun, went to

a meeting, and shot and killed someone who posed no threat. The court also noted that minor was wounded himself and went to get help yet did not render aid to the victim.

The court then said that its statement of decision (the court's written order) was very detailed and contained all the facts and criteria it had considered. The court's written order stated: "The court finds the People have met their burden of proof to have this matter transferred to a court of criminal jurisdiction by clear and convincing evidence that the minor is not amenable to rehabilitation while under the jurisdiction of the juvenile court." The court orally granted the motion, stating: "The Court does find the minor is not amenable to services by the juvenile court as evidenced by his behavior and actions."

DISCUSSION

I. <u>Substantial Evidence Supported the Juvenile Court's Finding That Minor Was Not Amenable to Rehabilitation While Under the Juvenile Court's Jurisdiction</u>

Minor contends the court abused its discretion in finding he was not amenable to rehabilitation while under the juvenile court's jurisdiction, since there was no substantial evidence to support its findings. We disagree.

A. *Relevant Law*

As amended in January 2023, section 707, subdivision (a)(3), provides that to "find that the minor should be transferred to a court of criminal jurisdiction, the court shall find by clear and convincing evidence that the minor is not amenable to rehabilitation while under the jurisdiction of the juvenile court." In making its decision, the court shall consider the following five criteria: (A) "The degree of criminal

13

sophistication exhibited by the minor," (B) "Whether the minor can be rehabilitated prior to the expiration of the juvenile court's jurisdiction," (C) "The minor's previous delinquent history," (D) "Success of previous attempts by the juvenile court to rehabilitate the minor," and (E) "The circumstances and gravity of the offense alleged in the petition to have been committed by the minor." (§ 707, subd. (a)(3)(A)-(E); see *In re E.P.* (2023) 89 Cal.App.5th 409, 415-416 (*E.P.*).) "If the court orders a transfer of jurisdiction, the court shall recite the basis for its decision in an order entered upon the minutes, which shall include the reasons supporting the court's finding that the minor is not amenable to rehabilitation while under the jurisdiction of the juvenile court." (§ 707, subd. (a)(3).)

The amendment changed section 707 in two significant ways. "First, in the previous version of section 707, the prosecution's burden was by a preponderance of the evidence. Under the amendment the prosecution's burden is increased to clear and convincing evidence." (*E.P.*, *supra*, 89 Cal.App.5th at p. 416.) "Second, under the previous version whether the minor is amenable to rehabilitation while under the jurisdiction of the juvenile court was one of five factors for the court to consider in determining whether the case should be transferred to criminal court." (*Ibid.*) Under the amendment, it is "the ultimate question for the court to decide." (*Ibid.*) "Nevertheless, in deciding that question, the amendment requires the court to consider the same five factors listed in the previous version [of section 707.]" (*Ibid.*) Now, however, "[t]he analysis of the five criteria set forth in the statute should be focused through the lens of amenability to rehabilitation." (*In re S.S.* (2023) 89 Cal.App.5th 1277, 1288.) We note that "[u]nder

14

the amended statute, like the previous version, the court has the discretion to conclude that one or more of the five factors predominate so as to determine the result, even though some or all of the other factors might point to a different result." (*E.P.*, at p. 417.)

We review the juvenile court's order transferring a case to an adult court of criminal jurisdiction for abuse of discretion.[5] (*People v. Superior Court* (*Jones*) (1998) 18 Cal.4th 667, 680.) We review the trial court's factual findings as to the five fitness criteria under section 707, subdivision (a)(3)(A)-(E), for substantial evidence. (*Id*. at p. 681.) "When reviewing a finding that a fact has been proved by clear and convincing evidence, the question before the appellate court is whether the record as a whole contains substantial evidence from which a reasonable fact finder could have found it highly probable that the fact was true." (*Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1011.) In conducting our review, we "must view the record in the light most favorable to the prevailing party below and give appropriate deference to how the trier of fact may have evaluated the credibility of witnesses, resolved conflicts in the evidence, and drawn reasonable inferences from the evidence." (*Id*. at pp. 1011-1012.)

---

[5] Minor argues that the court "abused its discretion" in relying on a legally outdated probation report and by making findings that were unsupported by substantial evidence. Nonetheless, he contends this court should employ a de novo standard of review, since we have before us the exact same evidence that was before the juvenile court. However, as minor recognizes, "[w]e review the juvenile court's finding the minor was unsuitable for treatment in the juvenile court for error under an abuse of discretion standard." (*J.N. v. Superior Court* (2018) 23 Cal.App.5th 706, 714.)

15

"[T]he fundamental question before an appellate court reviewing for sufficiency of the evidence is the same, regardless of the standard of proof that applied below: whether any reasonable trier of fact could have made the finding that is now challenged on appeal." (*Conservatorship of O.B.*, *supra*, 9 Cal.5th at p. 1005.)

B. *Substantial Evidence Supports the Court's Findings*

The juvenile court had jurisdiction over minor until he reached the age of 25. (§§ 607, subd. (b), 707, subd. (b)(1), 1769, subd. (b); *Kevin P. v. Superior Court* (2020) 57 Cal.App.5th 173, 198.) In assessing whether he was amenable to rehabilitation before the expiration of juvenile jurisdiction, the court considered the following five criteria: the degree of criminal sophistication exhibited (§ 707, subd. (a)(3)(A)), whether minor could be rehabilitated before the expiration of the juvenile court's jurisdiction (*id.*, at subd. (a)(3)(B)), minor's previous delinquent history (*id.*, at subd. (a)(3)(C)), the success of previous attempts by the juvenile court to rehabilitate him (*id.*, at subd. (a)(3)(D)), and the circumstances and gravity of the alleged offense (*id.*, at subd. (a)(3)(E)). A review of the evidence considered relevant by the juvenile court shows that substantial evidence supported its ultimate finding that minor was not amenable to rehabilitation while under the juvenile court's jurisdiction.

1. *Minor's Criminal Sophistication* (§ 707, subd. (a)(3)(A))

The court found that the degree of sophistication exhibited by minor weighed in favor of a transfer to a criminal jurisdiction court. Referencing the probation report, the court noted that minor was 17.6 years old at the time of the shooting. It further noted that minor was with three other individuals at the time of the shooting, whereas the victim

16

was by himself, the victim was shot in the back, and the shooting appeared to have been premeditated. The court found that minor showed little to no remorse for his actions, as he referred to the victim as a " 'random plug.' " It also observed that minor continued to engage in criminal activity after the shooting, thereby demonstrating a complete lack of desire to obey the law and live a law-abiding lifestyle. The court concluded that minor appeared to be a leader rather than a follower in his criminal activities, and that he appeared "to show planning for his actions, as he secures weapons and engages in these unlawful activities with others." The evidence in the probation officer's report supports these findings. We additionally note the probation officer's observation that minor attempted to avoid being discovered, in that he sought medical help at a hospital in Riverside, when the shooting took place in Corona; he claimed to be the victim of random gun violence, even though he was shot after he shot the victim; and he hid the expended cartridge casing. In view of the evidence, the court properly agreed with the probation officer's assessment that minor should be transferred to a court of criminal jurisdiction, as to this criterion.

Minor contends the juvenile court erred with respect to this criterion because it rejected Dr. Berg's findings that minor was a follower, was of below-average intelligence, and suffered from depression and ADHD. He further argues that the court erred in relying on the probation officer's report, which only discussed the alleged crime and "ignored all the other factors the court was to consider." We see no error. Section 707, subdivision (a)(3)(A)(iii), provides that, when evaluating this criterion, the court "shall give weight to *any relevant factor*, including, but not limited to" things such as

"the minor's age, maturity, intellectual capacity, and physical, mental, and emotional health at the time of the alleged offense" and "the effect of the minor's family and community environment." (Italics added.) The probation officer's report focused on the instant offense and minor's criminal activity, which it reasonably considered relevant to "the degree of criminal sophistication exhibited by minor." (§ 707, subd. (a)(3)(A)(i).) Dr. Berg focused on the other factors that minor now refers to as "the only pieces of evidence relevant to [his] amenability to rehabilitation," such as his home life and his mental health diagnoses.[6] However, the court expressly stated that it read and considered the probation officer's report and the briefing filed by the parties, including Dr. Berg's evaluation. Thus, contrary to minor's claim, the court did not ignore the factors that Dr. Berg discussed. The fact that Dr. Berg provided a different perspective and had a different opinion on minor's criminal sophistication than the probation officer did not require the juvenile court to reach the same conclusion as Dr. Berg. Moreover, we must give due deference to the juvenile court's apparent determination that Dr. Berg's opinion was not persuasive in light of the entire record. (*Conservatorship of O.B., supra*, 9 Cal.5th at p. 996.)

---

[6] We note that the probation officer was aware of and considered minor's family background and psychological issues as demonstrated by the probation department's discussion of minor's home life and emotional needs with respect to the criterion of the success of previous attempts by the juvenile court to rehabilitate him. (§ 707, subd. (a)(3)(D).)

2. *Whether Minor Can Be Rehabilitated Prior to the Expiration of the Juvenile Court's Jurisdiction* (§ 707, subd. (a)(3)(B))

The court noted that minor was now 19 years old, and juvenile jurisdiction could be maintained up to age 25, provided he was committed to the pathways to success program in Riverside County. It observed that the probation officer went through minor's lifestyle the past two years and noted the escalation in seriousness of offenses he committed, as well as the terms and conditions placed on minor for those offenses. The court noted that minor was previously allowed a grant of DEJ, which was elevated to wardship, and he was committed to YTEC. There, he was ordered to participate in an array of programs, but repeatedly and consistently failed to adhere to the court-ordered terms and conditions. The court further noted that, upon release from the YTEC program, minor failed to attend many program dates and appointments. Based upon minor's lack of success or effort when previous services were offered, the court concluded that he could not be rehabilitated during the time the juvenile court would have jurisdiction over him.

The evidence in the probation officer's report supports all of the court's findings regarding the services that were offered to minor over the previous two years and his failure to participate or succeed in them. We specifically note the evidence shows that once minor was committed to YTEC, he received a myriad of services, including substance abuse counseling, individual therapy, family therapy, and psychiatric services. He completed the YTEC program on August 31, 2022. However, the evidence shows that, after his release from YTEC, minor's compliance with his probation conditions was

19

poor, and "he . . . made little to no progress towards maintaining his rehabilitation." He relapsed into using marijuana and refused to comply with directives to regularly attend outpatient treatment. Minor only sporadically participated in his required individual counseling, and he was continuously in contact with people on active parole/probation. He missed multiple appointments with his TAY peer and left two housing arrangements she made for him, and he only attended six of his 11 scheduled counseling sessions. The probation officer concluded: "Though the youth has not had the opportunity for commitment to Pathways to Success, his demonstrative history, lack of accountability, perception of himself as the victim and sustained pattern of violent behavior in the community, failure to connect to community resources prior and post release from YTEC, gang entrenchment and admission of being a gang member, writing to youth who remained in the YTEC program after his release, and continuing to carry weapons post release from YTEC, are not indicators of an individual to whom juvenile services would be appropriate." In view of the evidence, the court properly agreed that transfer to a court of criminal jurisdiction was warranted.

Minor does not dispute the record but, rather, again asserts that the court rejected Dr. Berg's expert opinion that he could be rehabilitated. In spite of the record, minor claims the prosecution "offered no evidence that the parole interval would not be sufficient here" and the court's conclusion was "misguided." However, the evidence supports the court's determination as to this criterion. (See *ante*.) As the court found, many juvenile services have been provided to minor, without success.

### 3. *Minor's Previous Delinquent History (§ 707, subd. (a)(3)(C))*

The court found that minor had an "extensive prior delinquent history and while as a ward of the court failed to show any meaningful compliance with terms and conditions of probation." Substantial evidence of minor's history of criminal offenses supported the court's finding that this factor weighed in favor of transferring the case. Relying on the probation report, the court noted that minor's two-year delinquency history included four law violations, with an escalation in his criminal conduct. The evidence showed that he admitted two burglary allegations, carrying a concealed dirk or dagger, and assault with a firearm. Furthermore, the evidence shows the current pending allegation of murder occurred in July 2021, which was right after the court granted him an opportunity on DEJ.

Minor argues that this criterion was not supported by substantial evidence because the court focused solely on his delinquent history but gave no consideration to the enumerated factor of the effect of his family and community environment and childhood trauma on his delinquent behavior. (§ 707, subd. (a)(3)(C)(ii).) He also complains the court "ignored the good facts," such as his graduation from high school and improved stability in a custodial setting. However, the probation report, which the court considered, included extensive information on minor's family background, his relationship with his mother, his education struggles, his unstable home life, his graduation from high school, and his performance in rehabilitation programs and custodial settings. Furthermore, Dr. Berg discussed minor's family life and lack of support from his parents and siblings, and the court stated that it read and considered Dr.

21

Berg's evaluation. Simply because the court came to a different conclusion than Dr. Berg does not mean the court did not consider those factors.

4. *Success of Previous Attempts by the Juvenile Court to Rehabilitate Minor (§ 707, subd. (a)(3)(D))*

The court found that "[t]here were multiple attempts to provide rehabilitative services to the minor, including a YTEC commitment," but "[e]ssentially nothing helped," since there were no changes to his behavior regarding lawfulness. Substantial evidence supports this finding. (See §§ I.C.2., I.C.3., *ante*.) Even Dr. Berg acknowledged that minor "has not fully benefited from prior attempts of the court to rehabilitate him."

Minor claims the evidence does not support the court's finding since he "never actually had the time to truly access all of [the] services" offered to him. He particularly points out that, after completing YTEC, he continued to receive some services, but he "barely had time to access all of these services before he was arrested again in November 2022 for the crime before the court." The record belies his claim, as he had two years to access the services offered to him, and any interruption was caused by his own criminal conduct and arrests.

5. *The Circumstances and Gravity of Minor's Offense (§ 707, subd. (a)(3)(E))*

The petition alleges that minor committed murder, and the court stated that "the charged offense is as serious as it can get," as a "life was taken unnecessarily." The court found that minor's actions "were done with a complete lack of empathy and a complete disregard for human life," in that he obtained a gun, went to a meeting, and shot a

22

defenseless individual in the back. Then, after being shot himself, minor sought medical care, but did nothing to help the victim. The court found that this criterion weighed in favor of transferring minor. There was substantial evidence to support the court's finding. The probation report stated the offense was extremely serious, as it resulted in the death of a 16-year-old victim. The evidence showed that minor shot the victim in the back, then hid the expended cartridge casing before being shot himself. After seeking medical treatment for his own injury, minor went home and continued his normal activities, as if nothing had occurred, for 15 months before he was arrested. When confronted about his actions, minor admitted to killing the victim but made excuses and expressed no remorse.

Minor asserts that, "[b]ecause the charge remains pending, [he] remains clothed in the presumption of innocence and has a right to proof beyond a reasonable doubt." He further questions the evidence, asserting that there were no eyewitnesses who identified him as the shooter, and the evidence only showed "that he was involved." He also states there was limited information about the other people in the car and suggests that he might have been a follower who was "being made the scapegoat of the entire incident." He further asserts that, "[w]ithout more evidence, it was impossible to determine the actual shooter." However, the evidence showed that minor admitted that he had planned to rob the victim of marijuana, shot the victim, and then hid the expended cartridge casing. Minor claimed he shot the victim due to feeling "paranoid." Further, minor's suggestion that he might have been a scapegoat is pure speculation. In any event, section 707, subdivision (a)(3)(E)(ii), required the court to evaluate such factors as "the actual

23

behavior of the person, the mental state of the person, the person's degree of involvement in the crime, [and] the level of harm actually caused by the person." The court properly evaluated the evidence, which showed that minor intentionally shot and killed another minor and seemingly had no reservations or remorse.

In sum, we must view the evidence in the light most favorable to the judgment. In doing so, we conclude that substantial evidence supports the juvenile court's "ultimate" finding that minor is not amenable to rehabilitation while under the jurisdiction of the juvenile court. (*E.P.*, *supra*, 89 Cal.App.5th at p. 416; *Conservatorship of O.B.*, *supra*, 9 Cal.5th at pp. 1011-1012; § 707, subd. (a)(3).) Accordingly, the court properly ordered the matter transferred to a court of criminal jurisdiction.

II. <u>Minor Forfeited His Claim That the Court Erred in Relying on the Probation Report, and He Has Failed to Establish Ineffective Assistance of Counsel</u>

Minor contends the trial court abused its discretion in relying on the probation report since it analyzed the case under "the old standard of law." He specifically points out that the probation report made no mention of the change in the standard of proof required to find a transfer appropriate, and it failed to include any discussion on his amenability to treatment. Minor further argues the court abused its discretion in failing to require the probation department to amend its report to reflect the changes in the law, which resulted in his fundamental rights to due process and a fair hearing being violated. Minor also claims it is reasonably probable that, had the probation report used the new standard, its recommendation would have been different. Finally, he asserts that the case should be remanded for an updated probation report.

24

The People argue that minor has forfeited his claims by failing to object to the probation report at the transfer hearing. To the extent minor is arguing that the court erred in admitting the probation report and that the case should be remanded for the probation report to be updated, we agree that he has forfeited such claims. (*People v. Abel* (2012) 53 Cal.4th 891, 924 ["A defendant who fails to make a timely objection or motion to strike evidence may not later claim that the admission of the evidence was error . . . ."]; see *People v. Seijas* (2005) 36 Cal.4th 291, 302 [" '[D]efendant's failure to make a timely and specific objection' on the ground asserted on appeal makes that ground not cognizable."].)

Acknowledging his failure to object to the use of the probation report, minor argues that his counsel rendered ineffective assistance of counsel (IAC) by failing to object.[7,8] A defendant who claims IAC must establish that his counsel's performance was deficient under an objective standard of professional competency, and that there is a reasonable probability that, but for counsel's errors, a more favorable determination would have resulted. (*People v. Holt* (1997) 15 Cal.4th 619, 703.) If the defendant

---

[7] In the alternative, minor argues that we can exercise our discretion to consider the issues in the interests of justice and fundamental due process. We will consider the issues under his IAC claim.

[8] We note that, in his reply brief, minor additionally asserts that his counsel also erred in writing his opposition to the transfer under the old standard of proof and failed to discuss amenability. Minor did not raise this claim in his opening brief. "Withholding a point until the reply brief deprives the respondent of an opportunity to answer it, however. Hence, a point raised for the first time therein is deemed waived and will not be considered, unless good reason is shown for failure to present it before. [Citations.] No good cause is shown here." (*People v. Baniqued* (2000) 85 Cal.App.4th 13, 29.)

makes an insufficient showing on either one of these components, the claim fails. (*Ibid.*)

We conclude that defendant has not established that he was prejudiced.

A. *Minor Has Failed to Establish IAC*

Minor argues that his counsel failed to object to the court relying on the probation report and failing to request the court to order an amended one. He asserts the probation report was presumably written "under the old preponderance of the evidence standard and not the clear and convincing standard" and thus claims it "did not accurately reflect the proper standard by which the report should have been written and how the court should determine the fitness of the juvenile." Minor contends the focus of the probation report should have been amenability to rehabilitation in the juvenile system, which is now the dispositive factor in whether to transfer a juvenile to a court of criminal jurisdiction. (Cal. Rules. of Court, rule 5.770 (rule 5.770).) He concludes that, had the report been written under the new standard, it is reasonably probable it would have recommended that he was amenable to treatment, and the court would have followed the recommendation.

The People argue that the amendments to section 707, subdivision (a), did not require that a probation officer base a transfer recommendation on clear and convincing evidence. We agree. Contrary to minor's claim, the amended statute does not require the probation officer to write the report under any particular standard. The statute simply requires the probation officer to "submit a report on the behavioral patterns and social history of the individual." (§ 707, subd. (a)(2).) The probation officer did so. Further, the statute only requires *the court* to make its finding of amenability by clear and

convincing evidence, and the court did so. Section 707 provides: "Following submission and consideration of the report, and of any other relevant evidence that the petitioner or the minor may wish to submit, the juvenile court shall decide whether the minor should be transferred to a court of criminal jurisdiction. In order to find that the minor should be transferred to a court of criminal jurisdiction, *the court shall find by clear and convincing evidence* that the minor is not amenable to rehabilitation while under the jurisdiction of the juvenile court." (§ 707, subd. (a)(3), italics added.)

The court was well aware of the change in the law to the clear and convincing standard. When it proceeded to allow the parties to present their arguments at the hearing, the court stated, "We'll start with the People since they bear the burden of proof by *clear and convincing evidence*." (Italics added.) The court took the matter under submission and then held a hearing to announce its ruling. At that hearing, it stated: "After reviewing and considering all reports, evidence and criteria, pursuant to Welfare and Institutions Code Section 707(a), paragraph (3), subparagraphs (A) through (E), the Court has determined that the People have shown by *clear and convincing evidence* that the minor should be transferred to a court of criminal jurisdiction." (Italics added.) The court specifically noted: "this case was heard this year following the change in 2023 to the burden of proof. *And so the Court did apply the new burden of proof to this hearing.*" (Italics added.) The written decision also states: "After reviewing and considering all reports, evidence and criteria pursuant to WIC 707(a)(3)(A)-(E), the court has determined *by clear and convincing evidence* that the minor should be transferred to the court of criminal jurisdiction." (Italics added.) Moreover, in its written decision, the court

27

acknowledged the probation report was written in December 2022, which was prior to the change in law. Thus, the court viewed the probation report appropriately.

In his reply brief, minor claims the court "does not mention amenability in its conclusory findings; the court only mentions transferability, the old standard, and notably does not mention the new clear and convincing standard of proof." He stresses that rule 5.770 makes clear that " 'non-amenability to rehabilitation' is an element that must be proven by the prosecution by clear and convincing evidence, separate and apart from the 5 criteria listed in section 707." Minor then claims the probation report and the court "ignore" the "shift away from transferability and towards amenability." However, this claim is clearly belied by the record. At the hearing, the court put specific comments on the record regarding its analysis of the five factors and concluded, "The Court does find the minor is *not amenable to services* by the juvenile court as evidenced by his behavior and actions." (Italics added.) In its written decision, the court found that "minor's prior lack of rehabilitation by efforts of the probation department indicate to this court that the minor is *not amenable to rehabilitation* and most likely would not succeed if granted a juvenile court disposition." (Italics added.)

We conclude that minor has not established there was a reasonable probability of a different result had his counsel objected to the court's use of the probation report because it was written prior to the amendments to section 707. Ultimately, the court reviewed all the evidence, applied the correct standard of clear and convincing evidence, and found that minor was not amenable to rehabilitation while under the jurisdiction of the juvenile court. (§ 707, subd. (a)(3).)

### III. No Remand is Needed

We granted minor's request to file supplemental briefing on March 7, 2024. In his supplemental brief, he contends that Senate Bill No. 545 (Senate Bill 545) made changes to section 707 that would benefit him, particularly in the juvenile court's inquiry into his childhood trauma and involvement in the child welfare or foster care system. Minor claims the court failed to consider any of his childhood trauma, including the death of his primary caregivers, interactions with the welfare system, and continual rejection by his mother. He also again asserts that rule 5.770 changed to reflect the necessity of focusing on amenability to treatment as a separate factor and "not one just subsumed into one of the individual criteria to be measured." Thus, minor argues that remand is required for another transfer hearing, so the court can apply the changes to section 707 and rule 5.770. The People concede, and we agree, that the amendments made to section 707 by Senate Bill 545 apply retroactively to minor, since the judgment in this case is not yet final. (*In re S.S.* (2023) 89 Cal.App.5th 1277, 1288-1289 (*S.S.*).) However, the People contend that remand is unwarranted because the court already considered the relevant factors under amended section 707; thus, a new transfer hearing would not yield a different result. We conclude that remand is unnecessary.

At the time of minor's transfer hearing, section 707, subdivision (a)(3), provided that the juvenile court "may" give weight to any relevant factor, including those specified in the statute. (Former § 707, subd. (a)(3); Stats. 2022, ch 330, § 1.) Subsequently, the Legislature enacted Senate Bill 545 (2023-2024 Reg. Sess.), effective January 1, 2024, which changed "may" to "shall" and rendered consideration of any relevant factor

29

mandatory.  (§ 707, subd. (a)(3), as amended by Stats. 2023, ch. 716, § 1.)  Senate Bill 545 also amended the statute by adding "the existence of [childhood trauma]" and "the minor's involvement in the child welfare or foster care system" as factors to consider in evaluating the minor's degree of criminal sophistication.  (§ 707, subd. (a)(3)(A)(ii).)

While Senate Bill 545's amendments did make consideration of the relevant factors mandatory by changing the language from "may give weight" to "shall give weight," the record in this case indicates the juvenile court gave weight to the relevant factors.  Specifically, the court stated twice that it considered all of the criteria in section 707, subdivision (a)(3)(A-E).  The court went through a detailed analysis of each criterion before ultimately finding minor's actions to be "violent and heartless," in that he chose to "engage in serious and violent activity, and take the life of another human being."  As to the degree of criminal sophistication exhibited by minor, the court noted that his actions were apparently premeditated, he showed little remorse, and before and after the instant offense, he continued to engage in criminal activity and appeared to enjoy such lifestyle.

Minor argues the court did not consider any of the childhood trauma he suffered in determining whether he was amenable to rehabilitation.  However, the record belies this claim.  We observe that, at the time of the court's order, section 707 did include childhood trauma as a factor; Senate Bill 545 merely added the words "the existence of" before "childhood trauma."  (§ 707, subd. (a)(3)(A)(ii).)  Further, the court stated that it read and considered the probation officer's report and the briefing filed by the parties, including Dr. Berg's evaluation, which included extensive information concerning

30

minor's family background, relationship with his mother, and unstable home life. We note that, just because the court did not discuss this evidence in its analysis of each criterion under section 707, subdivision (a)(3), does not mean the court failed to consider it.

As to the newly added criterion regarding minor's involvement in the child welfare or foster care system, the record is void of any evidence suggesting he had any such involvement. To the contrary, the probation report states that minor had no dependency history.

Finally, as to the contention that rule 5.770 requires the court to focus on amenability to treatment as a separate factor and "not one just subsumed into one of the individual criteria to be measured," we observe that rule 5.770 expressly provides the juvenile court may order transfer "if the court finds by clear and convincing evidence each of the following: [¶] (1) The youth was 16 years or older at the time of any alleged offense . . . ; [¶] (2) The youth should be transferred to the jurisdiction of the criminal court based on an evaluation of all the criteria in [section 707, subdivision (a)(3)]; and [¶] (3) The youth is not amenable to rehabilitation while under the jurisdiction of the juvenile court." (Rule 5.770(b).) Thus, by its very terms, the rule mandates an evaluation of the five statutory criteria set forth in section 707 as part of the court's determination on a motion to transfer. As we recently explained in *In re Miguel R.* (2024) 100 Cal.App.5th 152, 166, under section 707, the juvenile court is to consider each of the five statutory factors, determine the extent to which each factor suggests the minor may be amenable to rehabilitation, and weigh the factors in order to make an

31

ultimate determination of whether, collectively, the factors show the minor is amenable to rehabilitation. The court here properly considered all the evidence, evaluated the five criteria, and found there was clear and convincing evidence that minor was not amenable to treatment while under the jurisdiction of the juvenile court.

Ultimately, there is no reason to believe the juvenile court would reach a different conclusion regarding minor's amenability to rehabilitation if it applied the current version of section 707. (See *S.S.*, *supra*, 89 Cal.App.5th at p. 1289 [failure to apply amendments to § 707 is reviewed for harmlessness under *People v. Watson* (1956) 46 Cal.2d 818, 836.) Thus, we conclude no remand is needed.

## DISPOSITION

The court's order is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

FIELDS
                J.

We concur:


McKINSTER
    Acting P. J.


CODRINGTON
      J.

32